**NOT FOR PUBLICATION** [1]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>DAVID LEROY BEERS | Civil Action No. 09-1666 (FLW)<br><br>**OPINION** |

**WOLFSON, District Judge**

Appellant David Leroy Beers ("Debtor") appeals a final Order and Opinion of the Bankruptcy Court entered March 4, 2009, which denied Debtor's motion for sanctions against Joel Ackerman, Esq. and Zucker, Goldberg & Ackerman, counsel for EMC Mortgage Corporation ("EMC").[1]  This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  For the following reasons, the Court will affirm the decision of the Bankruptcy Court.

**I. BACKGROUND**

On March 26, 2008, Debtor filed a Chapter 13 Plan, proposing to pay EMC Mortgage Corporation $25,000.00 on account of estimated outstanding arrearages.  Although EMC Mortgage raised no objections, the Chapter 13 Trustee objected.  Thereafter, on April 28, 2008, Debtor submitted a modified Plan proposing to pay EMC $30,000.00 of the estimated outstanding arrearages.  EMC objected on the grounds that the modified Plan sought to pay an amount less than EMC's Proof of Claim, which set forth a total amount due of $88,682.84, with

---

[1] EMC is servicer for LaSalle National Bank, the creditor.

arrearages of $33,290.18. On June 3, 2008, Debtor filed another modified Plan, again proposing to pay $30,000.00 of the estimated outstanding arrearages to EMC.

On June 13, 2008, Debtor filed an objection to EMC's Proof of Claim, seeking to reduce the claim and/or seeking supplemental documentation and the production of records. On July 16, 2008, the Bankruptcy Court held the first of three hearings on Debtor's objection to EMC's Proof of Claim. At the July 16, 2008 hearing, the Bankruptcy Court found that Debtor had met its initial burden of producing evidence to defeat the Proof of Claim, noting that EMC had failed to attach a recorded mortgage, and similarly failed to provide adequate documentation to support its claim for arrearages and various other fees and costs. 1T9:18 - T10:9.[2] The Court further noted that although it was inclined to grant Debtor's motion to reduce the Proof of Claim, it was unable to do so because Debtor had failed to provide sufficient documentation to justify the reduction sought. The Bankruptcy Court adjourned the hearing, ordering EMC to supplement its documentation supporting its claim and position, and Debtor to further explain the manner of calculation of the relief sought in the proposed form of Order. 1T10:10-19. EMC supplemented its response to Debtor's claim objection by asserting for the first time that its claim was based on a final foreclosure judgment entered by the State court on May 31, 2006. Additionally, EMC filed an unsigned template of a certification of a representative of EMC in support of its claim.

On July 30, 2008, the parties again appeared before the Bankruptcy Court on Debtor's objection to EMC's Proof of Claim. After hearing the parties' arguments, the Bankruptcy Court again adjourned the hearing, ordering the parties to provide further briefing addressing the legal issues raised by Debtor's counsel concerning whether the judgment rate of interest or contract

---

[2] "1T__:__" refers to the transcript of the July 16, 2008 hearing before the Bankruptcy Court.

rate applied and what costs could appropriately be assessed in light of the entry of the judgment. 2T15:15 - 16:4.[3]  Thereafter, Debtor's counsel filed a brief addressing the legal issues raised at the July 30, 2008 hearing and responding to the supplemental documentation supplied by EMC in support of its Claim, noting that EMC had yet to file any affidavit or certification by an EMC representative (other than that of its counsel) in support of its Proof of Claim.  Counsel for EMC limited its response to the issue of merger, addressing none of the concerns raised at the prior hearing regarding EMC's factual support for its Proof of Claim.

   The Bankruptcy Court held a third and final hearing on Debtor's objection to EMC's Proof of Claim on September 10, 2008.  At the September 10, 2008 hearing, the Bankruptcy Court rejected Debtor's objection to the Proof of Claim based on the merger doctrine, finding that the original loan document applies when a mortgage is reinstated pursuant to 11 U.S.C. § 1322(b)(5). 3T7:19 - 9:3.[4]  Because EMC's counsel failed to brief the issue of the res judicata effect of the fees and costs awarded in the foreclosure judgment, as instructed by the Bankruptcy Court at the July 30, 2008 hearing, the Bankruptcy Court noted that it "must conclude that EMC is conceding that it is not entitled to additional attorney's fees or costs."  3T9:17-23.  Finally, citing to its finding at the July 16, 2008 hearing that EMC's Proof of Claim was not entitled to the presumption of validity because of the deficiencies in the filing, the Bankruptcy noted that the burden of persuasion to prove its claim rested with EMC.  3T9:24 - 10:4.  Because EMC again failed to provide a signed certification from an EMC representative, the Court found "zero admissible proof of the validity of any of the items listed in the arrearage portion of the Proof of

---

[3]   "2T__:__" refers to the transcript of the July 30, 2008 hearing before the Bankruptcy Court.

[4]   "3T__:__" refers to the transcript of the September 10, 2008 hearing before the Bankruptcy Court.

Claim." 3T10:5-8. In finding no factual support for EMC's Proof of Claim, the Bankruptcy Court noted

> During oral argument on July 30th, [Counsel] . . . admitted that at the last hearing the Court had requested a certification signed by her client, EMC, to support its Proof of Claim. [Counsel] stated that she did not have time to obtain that prior to the hearing but wanted a short adjournment to supply it. As of the date of this hearing no certification signed by EMC has been supplied. 3T9:5-12.

Thus, on September 11, 2008, the Bankruptcy Court entered Debtor's Order reducing EMC's claim to $55,392.66.

On September 16, 2008, EMC moved for reconsideration. In support of the motion, counsel for EMC submitted the certification of a paralegal from its office who stated that while she did finally obtain a signed certification from an EMC employee on August 29, 2008, the certification was never filed before the September 10, 2008 hearing. Debtor opposed the motion for reconsideration and submitted a fee application. On October 8, 2008, the Bankruptcy Court held a hearing on EMC's motion for reconsideration. The Bankruptcy Court denied EMC's motion, noting that it found no grounds for reconsideration in light of the fact that counsel for EMC was given two opportunities to provide the Court with a signed certification in support of its Proof of Claim and failed to do so. 4T7:13 - 8:2.[5] The Bankruptcy Court noted that

> "[t]he necessity of having a certification signed by a party with personal knowledge is not a mere technicality. Certifications take the place of live testimony on Motion days and it's imperative that the Court be able to rely on their accuracy. As outlined in the Debtor's brief, EMC has not taken that seriously and, as a result, when this matter was heard for the third time on September 10th the Court had no admissible evidence before it from EMC. Therefore, the Court granted the Debtor's Motion. The Court is not convinced that there was a windfall to the Debtor because to date EMC has

---

[5] "4T__:__" refers to the transcript of the October 8, 2008 hearing before the Bankruptcy Court.

>not provided the Court or the Debtor with decipherable information to
>support the amount listed in the Proof of Claim. 4T7:15 - 8:2.

On September 17, 2008, the day following the filing of EMC's motion for reconsideration, Debtor filed the motion for sanctions at issue in the instant appeal. The Bankruptcy Court held oral argument on the motion for sanctions on January 14, 2009, but reserved decision and issued a written decision on March 3, 2009 denying the motion.[6]

## II. STANDARD OF REVIEW

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal." Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005). Legal conclusions of the bankruptcy court are subject to de novo or plenary review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997); Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir.1995). The factual determinations of the bankruptcy court are not to be set aside unless "clearly erroneous." See Fed. R. Bankr.P. 8013; Chemetron, 72 F.3d at 345; *In re* Indian Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir.1995). On review of the factual findings of a bankruptcy court, a district court must "give 'due regard' to the opportunity of that court to judge first-hand the credibility of witnesses." Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir.1995). Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. Chemetron, 72 F.3d at 345.

---

[6] The Court notes that Debtor did not include the transcript of the January 14, 2009 hearing within the Designation of the Items to Be Included on the Record on Appeal, however, because the Bankruptcy Court reserved decision and issued a written Opinion setting forth the reasons for the denial of Debtor's Motion for Sanctions, this Court is nevertheless able to conduct a meaningful review.

The primary question before a court reviewing the imposition of sanctions "is whether the sanctioning court abused its discretion." Fellheimer, Eichen & Braverman, P.C., 57 F.3d at 1223 (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990), *superseded in other respects by rule*, 1993 Amendments to Fed.R.Civ.P. 11 ("[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."). The reviewing court does "not seek to determine whether [it] would have applied the sanction [itself] in the first instance." Fellheimer, Eichen & Braverman, P.C., 57 F.3d at 1223.

### III. DISCUSSION

Debtor's motion for sanctions against Joel Ackerman, Esq. and the firm of Zucker, Goldberg & Ackerman, jointly and severally, was based primarily upon Section 1927 of Title 28, United States Code. Pursuant to 28 U.S.C. § 1927,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

It is well settled in this Circuit that "[t]he statute thus limits attorney sanctions imposed thereunder to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." LaSalle Nat'l Bank v. First Connecticut Holding Group, 287 F.3d 279, 288 (3d Cir. 2002). Therefore, "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad

judgment or well-intentioned zeal." Grider v. Keystone Health Plan Central, Inc., 580 F.3d 119, 142 (3d Cir. 2009) (quoting LaSalle Nat'l Bank, 287 F.3d at 289). "[T]he bad faith requirement is necessary for a finding of liability, otherwise 'an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees . . . .'" LaSalle Nat'l Bank, 287 F.3d at 289 (quoting Baker Indus. Inc. v. Cerberus Ltd., 764 F.2d 204, 209 (3d Cir. 1985)). "'Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 188 (3d Cir. 2002) (quoting Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. of Teachers, AFL-CIO, 829 F.2d 1370, 1375 (6th Cir. 1987)).

 It was within the foregoing framework that the Bankruptcy Court considered whether monetary sanctions could be imposed under § 1927. The Bankruptcy Court found no difficulty with regard to the first three requirements, noting that

> [t]he papers submitted by EMC's counsel were so deficient and inconsistent with each other that they unquestionably multiplied proceedings and the necessity for counsel to appear, and that they did so in an unreasonable and vexatious manner, thereby increasing the cost of the proceedings.
>
> . . . .
>
> In fact, at the three hearings on this matter, three separate individuals presented oral argument on behalf of EMC and their positions were so discordant it was sometimes hard to believe that counsel had read any of the papers submitted, even those submitted on behalf of their own client. EMC's counsel offer no excuse why it failed to object to the first plan or to the motion to fix the value of the collateral. Sadly, this is only slightly more egregious than the manner in which EMC's counsel seems to

> comport itself in many Chapter 13 proceedings before this court." Op. at 5-6.

With respect to the bad faith requirement, however, the Bankruptcy Court found that while the manner in which Zucker, Goldberg & Ackerman handled the case on behalf of EMC was "terribly inefficient and burdensome for all of the parties involved in the case" and amounted to "textbook unprofessional conduct", it did not support a finding of bad faith.  Op. at 6.  While the Bankruptcy Court may have found counsel's conduct to be unprofessional, it held that

> It does not . . . involve misrepresentation to the court or evince a purpose to unfairly manipulate the Bankruptcy Code.  It does not give any indication of having been motivated by an attempt to gain any sort of litigation advantage or other ulterior purpose.  In fact, the Court's own observations of the manner in which the Ackerman Firm conducts its business in this and other cases belies any intention to gain a particular advantage in a particular case.  The Firm's conduct is simply monumentally inconsiderate of the time of their adversaries and the court.
>
> As frustrating as EMC's counsel's conduct was, the Court cannot award sanctions under 28 U.S.C. § 1927, because it cannot find willful misconduct.

On appeal to this Court, Debtor contends that the "Bankruptcy Judge utilized an improper legal standard, requiring the presence of subjective bad faith or intentional misconduct." Debtor's Br. at 15.  In short, Debtor challenges the Bankruptcy Court's application of the bad faith requirement enunciated by the Third Circuit in <u>Baker Indus. Inc. v. Cerberus Ltd.</u>, 764 F.2d 204 (3d Cir. 1985) (hereinafter referred to as "<u>Baker</u>").   Essentially, Debtor contends that the bad faith requirement imposed by <u>Baker</u> and its progeny in connection with § 1927 sanctions simply does not exist in the plain language of the statute and was not intended by Congress when it drafted 28 U.S.C. § 1927.  Debtor's Br. at 19.  Citing to <u>Roadway Express v. Piper</u>, 447 U.S.

752, 767-68 (1980)[7], as controlling authority, and decisions in other circuit courts, which Debtor contends undermine the Baker decision, Debtor urges this Court to overturn the Bankruptcy Court's determination that bad faith was a prerequisite to the imposition of sanctions under § 1927.

Presumably, Debtor has raised this issue in order to preserve it on appeal. The Court will not consider the issue further, as it finds that the Third Circuit has spoken directly to Debtor's argument. It is abundantly clear to this Court that, at least in this Circuit, "before a court can order the imposition of attorney's fees under § 1927, it must find willful bad faith on the part of the offending attorney." Zuk v. Eastern Pennsylvania Psychiatric Inst., 103 F.3d 294, 297 (3d Cir. 1996) (quoting Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1191 (3d Cir. 1989); see also, Grider v. Keystone Health Plan Central, Inc., 580 F.3d at 142 (noting that "under § 1927, an attorney's conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.") (*internal quotations omitted*). Accordingly, the Court finds no merit in Debtor's contention that the Bankruptcy Court applied the wrong legal standard in denying the motion for sanctions under § 1927.

Alternatively, in a three sentence paragraph in Debtor's 39 page brief, Debtor contends that "appellant does not dispute any of the factual findings of the Court except the Court's finding that there was no bad faith present and there was no subjective bad faith present." Debtor's Br. at 38. Debtor appears to argue that the Bankruptcy Court erred in failing to find that bad faith could be implied "where a litigant defends against a claim objection and has no evidence and

---

[7] This Court does not agree that Roadway Express v. Piper, 447 U.S. 752, 767-68 (1980) supports Debtor's contention that the Supreme Court determined, prior to the Third Circuit's decision in Baker, that bad faith is not a prerequisite to the imposition of sanctions under § 1927.

produces no evidence even after repeated opportunities have given [sic] to show their proofs, and yet still proceeds." Debtor's Br. at 38. This Court disagrees and finds no error by the Bankruptcy Court in this regard. The Bankruptcy Court thoughtfully considered EMC's counsel's conduct and found no willful misconduct.

Finally, Debtor contends that the Bankruptcy Court erred in failing to impose sanctions pursuant to its inherent authority.[8] Although Debtor cited some authority in support of this argument that bad faith is not always a requirement for the imposition of sanctions pursuant to the court's inherent authority, Debtor inexplicably failed to fully brief the issue. See Debtor's Br. at 38. Nevertheless, in the interest of completeness, this Court will consider the issue.

The Bankruptcy Court appears to have considered Debtor's request for sanctions under the court's inherent authority when it determined whether sanctions could be imposed under 11 U.S.C. § 105(a). Citing to Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Bankruptcy Court noted that a court has the discretion to impose an appropriate sanction for conduct which abuses the judicial process. Op. at 8. The Bankruptcy Court noted, however, that "this is so only when attorney conduct runs afoul of specific

---

[8] The Court notes that Debtor appears to challenge the Bankruptcy Court's denial of sanctions under its inherent authority under both the abuse of discretion and clear error standards of review. See Debtor's Statement of Issues on Appeal. But see Debtor's Br. at 8. The Third Circuit made clear in the context of determining the appropriateness of sanctions under § 1927, however, that "[b]ad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith is made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." In re Prudential Insurance Company America Sales Practice Litigation Agent Actions, 278 F.3d at 181 (quoting Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991)). After noting that "[s]imilarly, an award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith", the Third Circuit went on to hold that "[w]e also review an award of sanctions pursuant to the court's inherent powers for an abuse of discretion. '[S]uch an abuse occurs when the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" Id. (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)). Accordingly, in reviewing the Bankruptcy Court's denial of sanctions, this Court will apply the foregoing standard.

provisions in the Bankruptcy Code. *See, e.g.*, <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 206 (1988); <u>U.S. v. Sutton</u>, 786 F.2d 1305, 1308 (5th Cir. 1986)('[Section 105] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'))." Op. at 8. Finding that sanctions under § 105, like those under § 1927, require a showing of bad faith by counsel before they may be imposed, the Bankruptcy Court determined that sanctions under § 105 were not appropriate. <u>Id.</u>

Although the Bankruptcy Court appears to have viewed § 105 as the authority for the exercise of the court's inherent authority to sanction, the third Circuit has not expressly addressed whether 11 U.S.C. § 105(a) is simply a codification of the inherent power of federal courts to sanction bad faith litigation conduct as was recognized by the United States Supreme Court in <u>Chambers</u>, 501 U.S. at 44-45, or whether a bankruptcy court may sanction under the inherent power recognized by the Supreme Court in <u>Chambers</u> even when §105(a) is inapplicable. As was recognized by one bankruptcy court in this circuit,

> It has been suggested that §105 is a "codification" of the inherent power of the court to supervise the activities of those appearing before it. <u>Jones v. Bank of Santa Fe</u> (<u>In re Courtesy Inns, Ltd.</u>), 20 F.3d 1084, 1089 (10th Cir. 1994)(We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in <u>Chambers</u>.); accord, <u>Caldwell v. Unified Capital Corp.</u> (<u>In re Rainbow Magazine, Inc.</u>), 77 F.3d 278 (9th Cir. 1996). (Articulating that § 105 is a recognition of the inherent power of the court to regulate the proceedings before it.) <u>Id.</u> at 284-85; <u>In re Chisum</u>, 68 B.R. 471, 473 (9th Cir. BAP 1986)(same), *aff'd* 847 F.2d 597, *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). I agree with these cases and conclude that §105 does, indeed, authorize the bankruptcy court to exercise its inherent powers.

In re Engel, 246 B.R. 784, 789 (Bankr. M.D.PA Feb. 25, 2000).  Other bankruptcy courts in this circuit, however, have invoked the inherent authority of the court to sanction even after determining that § 105 is inapplicable.  See In re Reath, No. 04-49188, 2007 WL 1114089, * 1 (Bankr. D.N.J. Apr. 12, 2007) (imposing fee-based sanctions for bad faith litigation under court's inherent authority after finding § 105 inapplicable).  Additionally, courts, including the Third Circuit, have recognized the inherent power of the bankruptcy court to sanction, without reference to § 105 as authority for that power.  See In re Genesis Health Ventures, Inc., 362 B.R. 657, 662 (D.DE. 2007)( "[T]he Bankruptcy Court concluded, and the Court agrees, that the Bankruptcy Court retains the inherent power to award sanctions in order to enforce decorum and redress vexatious litigation.") (*citing* Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1224-25 (3d Cir. 1995)(upholding Bankruptcy Court's inherent authority to impose sanctions)).

Regardless of whether the inherent authority of the bankruptcy court to impose sanctions stems from § 105 or, like other courts have held, is simply rooted in Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), it is clear that the Bankruptcy Court viewed a finding of bad faith as a prerequisite to the imposition of the monetary sanctions.  It is this bad faith requirement that Debtor disputes on appeal.[9]  While a finding of bad faith is "generally" required, it is not mandated in every case.  As the Third Circuit has noted

> Although we stated in Landon v. Hunt, 938 F.2d 450 (3d Cir. 1991), that "a prerequisite for the exercise of the district court's inherent power to sanction is a finding of

---

[9] Debtor does not address whether sanctions should have been separately imposed under § 105 and in the absence of any argument on appeal, this Court will not address the issue.

bad faith conduct" (id. at 454), that statement should not be read to require a finding of bad faith in every case, regardless of the sanction contemplated. Landon addressed the propriety of assessing *attorneys' fees* against a litigant; thus, we followed the Supreme Court's decision in Chambers, which also involved assessment of attorneys' fees. Landon, 938 F.2d at 454. Under the American Rule, attorneys' fees ordinarily may not be shifted to a losing party. However, the Court in Chambers had relied on an exception to that rule allowing fees to be shifted when the losing party exhibited "bad faith." Chambers, 501 U.S. at 45-46, 111 S.Ct. at 2133. As Justice Scalia pointed out in his dissent, however, the fact that *fee-shifting* as a sanction requires a finding of bad faith "in no way means that all sanctions imposed under the courts' inherent authority require a finding of bad faith." Id. at 59, 111 S.Ct. at 2140. Thus, a court need not always find bad faith before sanctioning under its inherent powers: "[s]ince necessity does not depend upon a litigant's state of mind, the inherent sanctioning power must extend to situations involving less than bad faith." Id.; see generally Estate of Leon Spear v. Commissioner of IRS, 41 F.3d 103, 111-12 (3d Cir. 1994)(discussing role of bad faith in sanctioning).

[Republic of Philippines v. Westinghouse Electric Corp., 43 F.3d 65, 74 n.11 (3d Cir. 1995).

This circuit has more recently noted

> We state that a finding of bad faith is "usually" required under the court's inherent powers because we noted in Republic of Philippines v. Westinghouse Electric Corp., 43 F.3d 65, 74 n.11 that such sanctions do not always require a showing of bad faith. Thus, in Martin v. Brown we were careful to note that "[u]sually the inherent power that a district court retains to sanction attorneys also requires a finding of bad faith." 63 F.3d 1252 at 1265 (emphasis added). We need not dwell on when, if at all, a court may impose such sanctions without first finding bad faith . . . .

[In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d at 181 n. 4]. While the Third Circuit has not made clear when sanctions may be imposed based upon something less than bad faith conduct, this Court agrees with the Bankruptcy Court that when the sanction sought involves fee-shifting, a finding of bad faith is indeed required. The Bankruptcy Court applied the correct legal standard in requiring bad faith conduct as a prerequisite to the imposition of such sanctions and, as previously discussed in this Court's review of the denial of § 1927 sanctions, this Court finds no error in the Bankruptcy Court's determination that the record did not support a finding of bad faith. Here, where the sanction sought was a fee-shifting sanction and where Debtor's conduct in failing to provide sufficient documentation at the July 16, 2008 hearing necessitated further hearings, this Court does not find that the Bankruptcy Court's decision to deny sanctions under its inherent authority should be reversed.

Finally, the Bankruptcy Court considered whether sanctions could be imposed under Rule 9011 of the Federal Rules of Bankruptcy Procedure. The Bankruptcy Court noted that a finding of bad faith was not required, and that a court need only find "a showing of objectively unreasonable conduct." Op. at 7 (quoting Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1225 (3d Cir. 1995)). Nevertheless, the Bankruptcy correctly declined to impose sanctions under Rule 9011 finding that Debtor could not avail himself of Rule 9011 as a sanctioning tool because counsel failed to afford EMC's counsel the "safe harbor" protection required by Fed. R. Bankr. Proc. 9011 (c)(1)(A). This Court finds no error or misapplication of the law in the Bankruptcy Court's determination.[10]

---

[10] The Court notes that in the Statement of Issues on Appeal, Debtor lists as issue No. 5 "Did the Bankruptcy Court abuse it's [sic] discretion in failing to issue an Order to show cause why sanctions should not be imposed upon the respondents pursuant to Bankr. Rule 9011(c)?". Nowhere in his brief to this Court, however, does

IV.  CONCLUSION

For the foregoing reasons, the Court will affirm the Bankruptcy Court's denial of Debtor's motion for sanctions.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: November 30, 2009

---

Debtor even address the issue of whether the Bankruptcy Court erred in failing to issue an Order to Show Cause based on Rule 9011.  It is unclear whether the absence of any discussion regarding this claimed error in Debtor's brief signals Debtor's abandonment of the argument.  Nevertheless, this Court notes that an argument that the Bankruptcy Court should have issued an Order to Show Cause presumably at the January 14, 2009 hearing based upon Rule 9011 belies reason.  As the Bankruptcy Court was careful to point out, Debtor could not avail himself of 9011 as a sanctioning tool in light of his failure to afford Mr. Ackerman and his firm the "safe harbor" protection.  Indeed, "[i]f the twenty-one day period is not provided, the motion must be denied.  The purpose of the safe harbor is to give parties the opportunity to correct their errors, with the practical effect being that 'a party cannot delay serving its Rule 11 motion' - or, we suggest, its Rule 9011 motion - 'until conclusion of the case (or judicial rejection of the offending contention.).'"  In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3d Cir. 2008)